IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

DEBRA L. HERRING                                                    PLAINTIFF


       v.                              CIVIL NO.       2:10-CV-02127


MICHAEL J. ASTRUE, Commissioner
of Social Security Administration                                  DEFENDANT

## MEMORANDUM OPINION

       Plaintiff brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision

of the Commissioner of Social Security Administration (Commissioner) denying his claim for a

period of disability and disability insurance benefits (DIB) and supplemental security income

("SSI") under Title II of the Social Security Act (Act), 42 U.S.C. § 423(d)(1)(A). In this judicial

review, the court must determine whether there is substantial evidence in the administrative

record to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g)*.*

**I.       Procedural Background:**

       On September 27, 2007, Plaintiff filed applications for DIB and SSI under Titles II and

XVI of the Act, claiming disability as of August 19, 2007 due to chronic pain, fibromyalgia, and

problems with her shoulders, left knee, and back (T.47-51, 95).

       The Agency denied the applications at the initial and reconsideration levels (Tr. 34-36,

40-41, 364-366, 367-368). On July 24 , 2008, Plaintiff filed a request for an administrative

hearing (Tr. 26). On May 13, 2009, Plaintiff testified at a hearing where she was represented by

counsel (Tr. 369-401). Plaintiff was 45 years old at the time of the ALJ's decision and had a high

school education (Tr. 18, finding 7, 373). Plaintiff has no past relevant work experience (Tr. 18, finding 6).

## II.    Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id.* "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff

-2-

must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits:  (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience.  *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity.  *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

**III.    Discussion**:

Following the administrative hearing, the ALJ determined that the Plaintiff did not qualify as "disabled" under the Social Security Act, and denied Plaintiff's claim for disability insurance benefits and supplemental security income. In making this decision, the ALJ followed the five-step disability evaluation process set forth in 20 C.F.R. § 416.920. *See, e.g., Ramirez v. Barnhart*, 292 F.3d 576, 580 (8th Cir.2002). At step one, the ALJ concluded that Plaintiff has not engaged in substantial gainful activity since the alleged onset date of disability. At step two, the ALJ determined that Plaintiff's shoulder pain, back disorder, and osteoarthritis were severe impairments that impose significant limitations upon her ability to perform basic work-related activities, however, Plaintiff's impairments did not meet or medically equal one of the listed

-3-

impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

**A.  Listed Impairment**

The Plaintiff first contends that the ALJ committed error by not finding the Plaintiff disabled due to her non-exertional impairments. (ECF No. 14, pp. 1-7)

It is well settled that the claimant has the burden of proving her disability by establishing a physical or mental impairment lasting at least twelve months that prevents her from engaging in substantial gainful activity. See 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(A).

Nonexertional limitations are those that affect a claimant's ability to meet the demands of jobs other than the strength demands, that is demands other than sitting, walking, lifting, carrying, pushing or pulling. *Burnside v. Apfel*, 223 F.3d 840, 844 (8th Cir.2000), quoting 20 C.F.R. § 404.1569(a).

1.  Panic Attacks

For social security disability purposes, severe mental impairments are nonexertional limitations. See 20 C.F.R. § 404.1569a(a), (c). Unlike nonexertional limitations that are predominantly subjective, such as pain, many categories of severe mental impairment are listed in 20 C.F.R. pt. 404, subpt. P, app. 1, and their medical severity is evaluated at step three of the Commissioner's five-step evaluation process. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520a. This evaluation of disability on the basis of mental disorders is a complex task. See 20 C.F.R. pt. 404,

-4-

subpt. P, app. 1, § 12.00.

The ALJ did not evaluate the Plaintiff's case under any specific category of impairment but used the general guidelines under 12.00 C in assessing the severity of the Plaintiff's condition which call for an assessment of the Plaintiff's a) Daily Living Activities; b) Social Functioning; c) Concentration, Persistence or Pace; and d) Episodes of Decompensation.

a.  Daily Living Activities

The ALJ stated that in "this area the claimant has no limitations."  (T. 15).  While the ALJ did not discuss the Plaintiff's daily living activities here he did discuss them during his assessment of her RFC.

The Plaintiff did not list any mental impairment as a basis for her disability in November 2007. (T. 95). Nor does it appear in the record that she ever claimed to be disabled because of a mental impairment.  The fact that the plaintiff did not allege panic attacks as a basis for her disability in her application for disability benefits is significant, even if the evidence of panic attacks was later developed. See *Smith v. Shalala*, 987 F.2d 1371, 1375 (8th Cir.1993); *Dunahoo v. Apfel*, 241, F. 3d 1033, 1039 (8th Cir. 2001).

In her Function Report of November 2007 the Plaintiff stated that she, took care of her husband (T. 73), that she was able to take care of her personal care (T. 74), prepare simple meals, clean and do the laundry (T. 75), she could drive and ride in a car and shop (T. 76) and attend church two to three Sundays a month. (T. 77).  He treating physician notes of May 2009 reflect that the Plaintiff was able to "clean house, grocery shop, carry out personal dally chores, bathe, basically live independently other than occasional help, feed, clean, and take care of her self without significant impairment at this point." (T. 353).

-5-

These activities do not support plaintiff's claim  that her activities of daily living were markedly impaired.  *See Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996) (ability to care for one child, occasionally drive, and sometimes go to the store); *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996) (ability to visit neighbors, cook, do laundry, and attend church); *Novotny v. Chater*, 72 F.3d at 671 (ability to carry out garbage, carry grocery bags, and drive); *Johnston v. Shalala*, 42 F.3d 448, 451 (8th Cir. 1994) (claimant's ability to read, watch television, and drive indicated his pain did not interfere with his ability to concentrate); *Woolf v. Shalala*, 3 F.3d 1210, 1213-1214 (8th Cir. 1993) (ability to live alone, drive, grocery shop, and perform housework with some help from a neighbor).

b.  Social Functioning

The ALJ noted that the Plaintiff admitted that she regularly attends church, visits with her mother-in-law several times a week and is able to shop. The ALJ also noted that a "friend testified visiting weekly." These activities do not support the Plaintiff's claim that her social functioning was markedly impaired. *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996) (ability to visit neighbors, cook, do laundry, and attend church);

c.  Concentration, Persistence and Pace

The ALJ found that the Plaintiff had only mild limitation in concentration, persistence and pace.  He seems to base this only on the Plaintiff's testimony that since she had a seizure she has some difficulty in this area.  There are no medical records that document the Plaintiff's seizure.

d.  Episodes of Decompensation.

The ALJ noted, and the records confirm that the Plaintiff has had no episodes of

decompensation which have been for an extended time.  The ALJ correctly found that because the Plaintiff's mental impairments caused no more than "mild" effects in any of the three functional area and no episodes of decompensation of extended duration her mental impairments were non severe.

The ALJ correctly determined that the Plaintiff had failed to establish that she had a listed mental impairment.

2.  Fibromyalgia

The Plaintiff next contends that the ALJ failed to consider the pain associated with her fibromyalgia.  Nonexertional impairments can include hypertension, obesity, and pain. *Evans v. Chater*, 84 F.3d 1054, 1056 (8th Cir.1996).

Fibromyalgia syndrome is a common disorder characterized by multiple tender points, widespread deep muscle pain, fatigue, and depression. The term fibromyalgia comes from the Latin word for fibrous tissue (fibro) and the Greek terms for muscle (myo) and pain (algia).   See www.webmd.com.  Fibromyalgia is an elusive diagnosis; "[i]ts cause or causes are unknown, there's no cure, and, of greatest importance to disability law, its symptoms are entirely subjective." *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir.1996). *Tilley v. Astrue*  580 F.3d 675, 681 (C.A.8 (Ark.),2009).

The Plaintiff testified that Dr. Cessler and Dr. Rochelle diagnosed her with fibromyalgia and that she had all of the "trigger points" (T. 378) but a claimant's statements alone are not enough to establish a physical or mental impairment. See 20 C.F.R. §§ 404.1528(a), 416.928(a).

The only "diagnosis" for fibromyalgia in the record was by Dr. James Rochelle on July 6, 2004 which appears to be written on a prescription note. (T. 179).  There are no medical records

-7-

indicating how Dr. Rochelle arrived at this diagnosis or what test he performed.  The Plaintiff was treated for several specific orthopedic problems over many years but was never treated for fibromyalgia, and, outside of the 2004 diagnosis, no treating physician diagnosed the Plaintiff with fibromyalgia. A non-examining consultive physician rendered an opinion on October 6, 2005 that the medical records did not document a diagnosis of fibromyalgia (T. 181).

In general, the failure to obtain follow-up treatment indicates that a person's condition may not be disabling or may not be as serious as alleged. *See Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir.1995) (holding "[g]iven his alleged pain, Shannon's failure to seek medical treatment may be inconsistent with a finding of disability").

The ALJ however made no findings concerning the Plaintiff's claim of fibromyalgia.

3.  Nerve Conduction Study

The Plaintiff next contends that the ALJ failed to consider the nerve conduction study performed by Dr. Perry in May 2000.

The nerve conduction report stated that at "this time the patient has evidence of bilateral median nerve lesions at or distal to the wrist, i.e.  Bilateral carpal tunnel syndrome which appears to be mild or minimal degree on the right and probably very chronic without ongoing dedervation.  She appears to have a little more moderate degree of involvement on the let and it appears to be perhaps somewhat more recent." (T. 154). The Plaintiff was a trim painter at the time (T. 157). While the Plaintiff underwent numerous orthopedic procedures over the next several years it does not appear that she had any treatment for the conditions of her wrists.

The ALJ does not appear to have considered this condition at this step of the evaluation. Notwithstanding the ALJ's failure to explain his reasoning for discounting the Plaintiff's

impairments at this step the record supports the ALJ's determination that the Plaintiff had not

met her burden of proof to establish her disability at this step.

**B.  RFC**

At step four, the ALJ determined that Plaintiff had the residual functional capacity to

perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)[1] except that she can stand

or walk up to six hours in an eight hour work day and can sit for up to six hours in an eight hour

work day, and that she cannot perform work requiring overhead reaching. (T. 15-16).  The ALJ

then proposed a hypothetical question to the VE who testified that there would be jobs available

in the national economy for a person with the designated RFC.

RFC is the most a person can do despite that person's limitations. 20 C.F.R. §

404.1545(a)(1).  It is assessed using all relevant evidence in the record.  *Id.*  This includes

medical records, observations of treating physicians and others, and the claimant's own

descriptions of her limitations.  *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005);

*Eichelberger v. Barnhar* , 390 F.3d 584, 591 (8th Cir. 2004).  Limitations resulting from

symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3).  The

United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual

functional capacity is a medical question."  *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001).

Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical

---

[1] Light work is defined as exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly to move objects.... Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible.  *See Page v. Astrue*,  484 F.3d 1040, 1044 (C.A.8 (Ark.),2007)

evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

The Commissioner contends that the ALJ relied on a Physical RFC assessment performed by Dr. Ronald Crow, the state agency non-examining medical consultant who determined that Plaintiff could occasionally lift up to 20 pounds, frequently lift up to 10 pounds, could stand and walk about six hours in an eight-hour workday, and sit about six hours in an eight-hour workday (Tr. 170).  (ECF No. 15, p6).

The ALJ does not make a specific reference to Dr. Crow's opinion and it can only be assumed because the ALJ assessed "light work" to the Plaintiff and restricted her hours of work to six in an eight hour day.  The court notes however that the RFC assessment performed by Dr. Crow occurred on July 2, 2002 (T. 176). There is no explanation by the ALJ concerning the limitations that were assessed five years before the alleged current onset date of August 2007. [2]

There is also an opinion by a non-examining medical consultant, Dr. Anita, in October 2005, which found the Plaintiff's alleged disability to be non severe (T. 181) and an opinion by a third non-examining medical consultant, Dr. Thomas, issued February 2008 finding the Plaintiff's impairments to be non severe. (T. 275).  We have stated many times that the results of a one-time medical evaluation do not constitute substantial evidence on which the ALJ can permissibly base his decision. *See, e.g., Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir.1999) (stating that the opinion of a consultative physician does not generally satisfy the substantial evidence requirement).

The ALJ attempted to buttress his reliance on the RFC assessment of 2002 by the

---

[2]The court is aware of multiple claims of disability filed by this Plaintiff.

Plaintiff's treating physician's medical record of May 1, 2009.  Dr. Walker's notes state that the

Plaintiff's "Low back pain has been fairly well controlled on current medications".  His notes

also reflected that the Plaintiff was able to "clean house, grocery shop, carry out personal daily

chores, bathe, basically live independently other than occasional help, feed, clean, and take care

of her self without significant impairment at this point." (T. 353).  A claimant's ability to perform

household chores does not necessarily prove that claimant capable of full-time employment." *See*

*Ekeland v. Bowen*, 899 F.2d 719, 722 (8th Cir.1990) (*citing Easter v. Bowen*, 867 F.2d 1128,

1130 (8th Cir.1989));  *Dixon v. Barnhart*  324 F.3d 997, 1002 (C.A.8 (Ark.),2003)

 The court also notes that Dr. Walker diagnosed the Plaintiff with a herniated lumbar disk

on April 1, 2009 (T. 350).  This is contrary to the MRI that was performed in September 2004

which found "no disk herniation is identified" and the impression was "prominent disk bulges at

L3-4 and L4-5 with mild to moderate canal stenosis"  (T. 339).

 It appears that the Plaintiff first saw Dr. Walker on April 1, 2009 according to the Patient

Registration Information. (T. 345). Dr. Walker performed a physical exam on the Plaintiff on that

date and noted:

> SPINE: moderate diffuse tender over the lumbar back, bll muscle spasm,
> Moderate L3/4/5 point tenderness with tapping causes severe shooting
> pains in the left posterior leg, mild tender to deep si joint palpation, Severe
> radiculopathy with range of motion, direct pressure, leg raises, cross legs.
> Flexion and ext rom normal but with moderate pain. (T. 350).

Subsequently on his report he notes:

> **LAB**: 04-01-2009 MRI LUMBAR SPINE
> In old medical records: L4/5 and L5/S1 with mild to moderate central canal stenosis.

 The old medical records Dr. Walker is referring to appear to be the x-rays and MRIs taken

by the Mena Medical Center between 2000 and 2007 (T. 327-344). None of the medical documents in the record support Dr. Walker's diagnosis of a herniated disc. If Dr. Walker is relying on a later MRI it is not contained in the record.

A treating physician's medical opinion is given controlling weight if that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). These opinions are not automatically controlling, however, because the record must be evaluated as a whole. *Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir.2005). We will uphold an ALJ's decision to discount or even disregard the opinion of a treating physician where "other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." Id. at 920-21 (internal quotations omitted). The ALJ sought no clarification from Dr. Walker concerning the inconsistencies between his diagnosis and the medical record or try to determine the basis of the doctors opinion.

Also, there is no clear understanding of what Dr. Walker meant when he said that the Plaintiff's pain was "fairly well controlled on current medication" because no RFC assessment was sought from Dr. Walker. Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits. *See, e.g., Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir.2004); *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir.1987); see also *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir.1983) (affirming a denial of benefits and noting that the claimant's impairments were responsive to medication). *Warre v. Commissioner of Social Sec. Admin.* 439 F.3d 1001, 1006 (C.A.9 (Or.),2006). The court, however, is not

convinced that Dr. Walker's comment that her symptoms are "fairly well controlled" can be equated with the ability to perform light work. If a treating physician has not issued an opinion which can be adequately related to the disability standard, the ALJ is obligated to address a precise inquiry to the physician so as to clarify the record.  *See Vaughn v. Heckler*, 741 F.2d 177, 179 (8th Cir. 1984).

B.  Non-Exertional Impairments:

    1.  Panic Attacks

For social security disability purposes, severe mental impairments are nonexertional limitations. See 20 C.F.R. § 404.1569a(a), (c). Unlike nonexertional limitations that are predominantly subjective, such as pain, many categories of severe mental impairment are listed in 20 C.F.R. pt. 404, subpt. P, app. 1, and their medical severity is evaluated at step three of the Commissioner's five-step evaluation process. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520a. This evaluation of disability on the basis of mental disorders is a complex task. See 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00.

Evaluating mental impairments is often more complicated than evaluating physical impairments. *Obermeier v. Astrue*, Civil No. 07-3057, 2008 WL 4831712, at *3 (W.D.Ark. Nov. 3, 2008). With mental impairments, evidence of symptom-free periods does not mean a mental disorder has ceased. Id. Mental illness can be extremely difficult to predict, and periods of remission are usually of an uncertain duration, marked with the ever-pending threat of relapse. *Hutsell v. Massanari*, 259 F.3d 707, 711 (8th Cir.2001).  Adding to these difficulties, individuals with chronic psychotic disorders often structure their lives in a way to minimize stress and reduce their signs and symptoms. Id. Given the sometimes competitive and stressful conditions in which

people work, individuals with mental impairments "may be much more impaired for work than their signs and symptoms would indicate." *Id.; Obermeier*, 2008 WL 4831712, at *3. Worse yet, efforts to combat mental illness present their own unique difficulties. See Pate-Fires, 564 F.3d at 945. Individuals with mental illness often refuse to take their psychiatric medication-a symptom of the illness itself, rather than an example of willful noncompliance.

The record shows the Plaintiff was diagnosed with depression in August 2002 (T. 193) and  December 2002 and placed on Paxil (T. 195).  In March 2003 the Plaintiff was first diagnosed with Panic Disorder. (T. 192).  She was again diagnosed with Panic disorder in January 2004 and placed on Remaron and Zyprexa. [3]  In October 2006 the Plaintiff was diagnosed with dysthymia [4] by Dr. James Rogers. (T. 182). Her treating physician in May 2009 still had her on Clonazepam 1mg. [5] (T. 299).  Notwithstanding the Plaintiff long history of treatment for mental disorder and her testimony concerning her panic attacks no mental RFC assessment was performed.

The ALJ has a duty to fully and fairly develop the record.  *See Frankl v. Shalala*, 47 F.3d 935, 938 (8th Cir. 1995)(ALJ must fully and fairly develop the record so that a just determination of disability may be made). The ALJ is not required to act as Plaintiff's counsel. *See Clark v. Shalala*, 28 F.3d 828, 830 (8th Cir. 1994) (ALJ not required to function as claimant's substitute

---

[3]Zyprexa (olanzapine) is used to treat the symptoms of psychotic conditions such as schizophrenia and bipolar disorder.   See www.drugs.com  Viewed August 31, 2011.

[4]Dysthymia is a form of chronic unipolar depression that tends to occur in elderly persons with debilitating physical disorders, multiple interpersonal losses, and chronic marital difficulties. Several depressive episodes may merge into a low-grade chronic depressive state.  See www.medical-dictionary.thefreedictionary.com  Viewed August 31, 2011.

[5]Clonazepam is in a group of drugs called benzodiazepines (ben-zoe-dye-AZE-eh-peens). It affects chemicals in the brain that may become unbalanced and cause anxiety. Clonazepam is used to treat seizure disorders or panic disorder.  See www.drugs.com.

counsel, but only to develop a reasonably complete record); *see also Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995) ("reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial").

The court believes that remand is necessary to allow the ALJ to more fully develop the record concerning Dr. Walker's diagnosis of a herniated disc, to obtain a RFC from the plaintiff's treating physician and to obtain a mental RFC.

IV.   **Conclusion:**

Accordingly, the court finds that the ALJ's decision is not supported by substantial evidence, and therefore, the denial of benefits to the Plaintiff should be reversed and this matter should be remanded to the Commissioner for further consideration.

Dated  this 2nd day of September 2011.


*/s/ J. Marschewski*
HONORABLE JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

-15-